632 A.2d 1027

**Purdie George McGRATH, D.D.S., Petitioner**

v.

**STATE BOARD OF DENTISTRY, Department of State, Bureau of Professional and Occupational Affairs, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 18, 1993.

Decided Oct. 19, 1993.

Bryd R. Brown, for petitioner.

John F. Alcorn, Deputy Chief Counsel, for respondents.

Before CRAIG, President Judge, and FRIEDMAN, J., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Purdie George McGrath, D.D.S., appeals from an adjudication and order of the State Board of Dentistry (SBOD) which suspended McGrath's license to practice dentistry for one year, three months active suspension and nine months on probation, and imposed a $1,000.00 civil penalty on McGrath.

In May 1991, the prosecuting attorney for the SBOD prepared a memorandum recommending formal action against McGrath for violation of section 4.1(a)(4) of the Dental Law, Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. § 123.-1(a)(4), based on McGrath's being charged and found guilty of thirty-five (35) felony counts of Medicaid fraud.[1] The SBOD met on July 23, 1991 to hear the prosecuting attorney's request for disciplinary action against McGrath and, without ·discussion, approved the recommendation. Thereafter, on July 29, 1991, the SBOD issued an Order to Show Cause to McGrath, which sought to revoke or otherwise restrict his

---

1. Charges were brought respectively under sections 1407(a)(3) and (4) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, added by section 3 of the Act of July 10, 1980, P.L. 493, 62 P.S. § 1407(a)(3) and (4), known as the Fraud and Abuse Control Act. After a jury trial, McGrath was convicted of thirty (30) counts of violating section 1407(a)(3), 62 P.S. § 1407(a)(3), (submitting a duplicate claim for services for which the provider has already received or claimed reimbursement from any source), and five (5) counts of violating section 1407(a)(4), 62 P.S. § 1407(a)(4), (submitting a claim for services which were not rendered to a recipient). McGrath was sentenced to a term of imprisonment of four to twelve months, probation for a period of five years, restitution in the amount of $873.00 plus interest and a $10,000.00 fine.

license to practice dentistry in the Commonwealth of Pennsylvania. McGrath answered the show cause order on August 19, 1991, admitting that he had been found guilty of violating fraud and abuse control provisions of the Public Welfare Code but contending that because the verdicts were on appeal to the Superior Court of Pennsylvania, no final judgment had been entered against him. Inasmuch as the charge against him was predicated solely upon the guilty verdicts, McGrath maintained that he should not yet be subject to disciplinary action; rather, the SBOD should defer further proceedings pending a Superior Court decision and entry of a final judgment of conviction or acquittal.

The SBOD scheduled a hearing for December 2, 1991, from which McGrath sought both a continuance and a stay pending the outcome of his appeal to Superior Court. The SBOD continued the hearing until January 6, 1992 but denied McGrath's request for a stay. At the formal hearing on January 6, 1992, McGrath reaffirmed his position, stipulating that he had been found guilty of the fraud charges but requesting that, to avoid possible injustice in the event of a subsequent acquittal, the SBOD defer its adjudication on his license until final judgment was entered in his criminal appeal. McGrath never challenged the constitutionality of the SBOD procedures in instituting the action, conducting the hearing or rendering an adjudication.

■ On March 18, 1992, after McGrath's evidentiary hearing and the filing of post-hearing briefs, our Supreme Court issued its opinion in *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). In *Lyness*, the Court held that the State Board of Medicine violated a physician's due process rights by impermissibly commingling prosecutory and adjudicatory functions when three of the board members who decided to prosecute the physician also took part in the adjudication which revoked his medical license. Subsequently, on December 8, 1992, the SBOD issued its adjudication and order, effective January 8, 1993, suspending McGrath's license and imposing a fine. In the discussion accompanying its order, the SBOD noted the recent *Lyness* decision; however, the SBOD

concluded that the *Lyness* holding did not apply to McGrath because the procedures followed with regard to McGrath were untainted by the appearance of bias identified in *Lyness*.[2] On January 6, 1993, McGrath filed a Petition for Review of the SBOD order with this court,[3] in which he raised for the first time the issue of impermissible commingling of prosecutorial and adjudicatory functions in the SBOD proceedings against him.[4]

Specifically, McGrath argues that, under *Lyness*, sections 3(h) and (i) of the Dental Law, 63 P.S. §§ 122(h) and (i), are facially unconstitutional because those provisions unequivocally mandate the SBOD to perform, without separation, both prosecutorial and judicial functions.[5] Additionally,

2. In *Lyness*, the Court determined that an appearance of bias was created when the same administrative board members who determined that probable cause existed to initiate disciplinary proceedings against the physician for sexual misconduct also adjudged the physician's guilt on those charges. From this, the SBOD concluded that the harm to be avoided under *Lyness* is the possibility that board members who make a probable cause determination have prejudged the respondent's actual guilt. Thus, the SBOD distinguished its procedures from those of the medical board in *Lyness*, reasoning that this harm could not be anticipated where, as here, the SBOD was not required to make any factual judgment in its decision to institute formal action but rather, at both the prosecutorial and adjudicatory stages, merely relied on the fact that a guilty verdict had been entered against McGrath.

3. Our scope of review is limited to a determination of whether constitutional rights were violated, and whether the decision is in accordance with law and supported by substantial evidence. *Cassella v. State Board of Medicine*, 119 Pa.Commonwealth Ct. 394, 547 A.2d 506 (1988), *appeal denied*, 522 Pa. 585, 559 A.2d 528 (1989).

4. McGrath also filed a Petition for Supersedeas with the SBOD requesting a stay of the SBOD's order pending disposition of McGrath's Petition for Review filed with this court. The SBOD granted a temporary stay on January 7, 1993, to remain in effect until the SBOD could consider the merits of the petition for supersedeas; on January 12, 1993, the SBOD vacated the temporary stay and denied the supersedeas petition. McGrath then filed an Application for Supersedeas with this court, which Judge Pellegrini granted on January 21, 1993.

5. The General Assembly empowers the SBOD to act under section 3(h) and (i) of the Dental Law (Act), 63 P.S. §§ 122(h) and (i), which directs the SBOD as follows:

Section 122. General Powers of the State Board of Dentistry.
The State Board of Dentistry . . . *shall* have the following powers and duties:

McGrath contends that the procedure followed by the SBOD in adjudicating this proceeding violated McGrath's due process under *Lyness*.[6] On the other hand, the SBOD questions whether this court can properly consider either of McGrath's

> ....
>
> (h) to *investigate and conduct hearings,* either before the membership of the Board or committees thereof, and to *discipline and prosecute* those guilty of illegal practices;
>
> (i) to *suspend, revoke or refuse to grant licenses* as further provided for in Section 4.1.
>
> (Emphasis added.)
>
> Under *Lyness,* administrative agencies *can* be statutorily authorized to perform both prosecutorial and adjudicatory functions without violating due process; however, an agency with dual powers must isolate the roles by dividing them among unaffiliated agency entities. McGrath maintains that, unlike other enabling legislation, the Dental Law makes no allowance for isolating these functions but unequivocally directs the SBOD to exercise all these powers itself. He argues that the Legislature, by mandating that the SBOD *shall* have the power and duty to investigate, conduct hearings, discipline, prosecute, and thereafter deny, revoke or suspend licenses, has unconstitutionally commingled prosecutorial and adjudicatory functions within one body in violation of *Lyness.* McGrath reasons that because the Dental Law cannot be applied constitutionally where, under the clear language of this statute, the SBOD lacks authority to place any of its mandated functions in another entity, it is not only unconstitutional as applied to McGrath but is also void on its face.

6. McGrath argues that because the procedure adopted by the SBOD in its proceedings against him was identical to that declared unconstitutional in *Lyness*, the Dental Law is also unconstitutional as applied to McGrath. McGrath points out that all of the SBOD members who were present at the January 6, 1992 hearing were also at the July 23, 1991 Probable Cause Determination; thus, substantially the same body which addressed the issue of probable cause also decided the matter on its merits.

Moreover, McGrath argues that, despite the SBOD's determination to the contrary, *Lyness* applied even where in "authorizing formal action, the [SBOD] merely relied on the fact that the guilty verdict had been entered." (SBOD opinion; R.R. at 131a–132a.) McGrath contends that because *Lyness* did not condition due process rights on the reliability of the evidence against a license holder, the straightforward nature of the proofs involved in McGrath's case is irrelevant in determining the constitutionality of the SBOD's procedures. McGrath asserts that whether any actual bias existed as a result of the SBOD acting as both prosecutor and judge is inconsequential; rather, where the same body performs both roles, the mere potential for bias and the appearance of nonobjectivity "is sufficient to raise the red flag of protection offered by the procedural guaranty of due process." *Id.* 529 Pa. at 544, 605 A.2d at 1208.

arguments. We agree with the SBOD that McGrath has waived his opportunity to raise either of these issues.[7]

■ With regard to McGrath's first argument, the SBOD notes that Pa.R.A.P. 1513(a) requires that a Petition for Review contain "a general statement of the objections to the order or other determination.... The statement of objections will be deemed to include every subsidiary question fairly comprised therein." In his Petition for Review, McGrath refers to the *Lyness* decision only in paragraph 6, in which he states:

> 6. The decision and proceeding of the Respondent Board was in direct violation of the mandate of the Supreme Court of Pennsylvania as articulated in the case of Lyness v. Commonwealth of Pennsylvania, State Board of Medicine, [529] Pa. [535], 605 A.2d 1204, (1992) in that the Board, by commingling the prosecutorial and adjudicatory functions of *this proceeding, violated Petitioner's due process rights* under the Constitution of the Commonwealth of Pennsylvania.

(R.R. at 145a.) (Emphasis added.) Based on this language, the SBOD contends that McGrath never specifically challenged the facial unconstitutionality of the statute in his petition, but rather addresses that issue for the first time in his brief to this court. The SBOD maintains that whether the Dental Law is unconstitutionally void on its face is not a . subsidiary question fairly comprised within McGrath's stated objection that the procedures utilized by the SBOD in the proceeding against him violated the mandate of *Lyness* and, thus, McGrath has lost the opportunity to raise it. We agree.

■ Under Pa.R.A.P. 1551(a)(1), we are permitted to consider a challenge to the facial validity of a statute even when

---

7. In his Petition for Review, McGrath also asserts that the SBOD abused its discretion by denying McGrath's Motion for a Stay, (¶ 5), and claims that the allegations set forth against him do not constitute a per se violation of the Dental Law, (¶ 7). However, because McGrath does not include these issues in his Statement of Questions Involved, nor discuss them in his brief to this court, we will not address them. Pa.R.A.P. 2116(a); *Appeal of Gemstar/Ski Brothers*, 133 Pa.Commonwealth Ct. 115, 574 A.2d 1201 (1990).

that question was not previously raised before the governmental unit. However, the issue still must be included within the challenging party's Petition for Review to this court. That did not happen here. In paragraph 6 of his petition, *McGrath specifically challenges the SBOD procedure as violating the holding articulated in Lyness.* However, we recognize that *Lyness* itself never dealt with the facial invalidity of the medical board's enabling statute but rather considered only those regulations through which the medical board applied the statute. Thus, in his petition, McGrath only contests the constitutionality of the statute as it was applied to him. Because the question of whether the statute was facially unconstitutional was never specifically raised until McGrath's brief to this court, we decline to consider it. *See Glesk v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 202, 525 A.2d 1249 (1987); *Pierce v. Pennsylvania Board of Probation and Parole*, 46 Pa.Commonwealth Ct. 507, 406 A.2d 1186 (1979).

■ As to McGrath's second argument, the SBOD contends that McGrath also failed to properly preserve this issue for appeal. The SBOD argues that, pursuant to section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a) and Pa. R.A.P. 1551, McGrath has waived the procedural due process issue raised in paragraph 6 of his Petition for Review because he did not challenge the constitutionality of the SBOD's procedures before the administrative agency.

Our Supreme Court and this court have both concluded that a constitutional challenge to agency proceedings must be timely raised and preserved for purposes of appellate review. *Blackwell v. State Ethics Commission*, 527 Pa. 172, 589 A.2d 1094 (1991) (Blackwell V); *Zontek v. Brown*, 149 Pa.Commonwealth Ct. 628, 613 A.2d 683 (1992). In *Blackwell V*,[8] the Court determined the applicability of *Blackwell v. State Ethics*

8. On June 30, 1992, the Pennsylvania Supreme Court, in a *per curiam* order, denied the State Board of Medicine's applications for clarification and reargument in *Lyness*. In a concurring statement, Justice Papadakos cited *Blackwell V* as clearly answering the question of whether *Lyness* applies retroactively or prospectively. (No. 174 E.D. Appeal Docket 1990.)

*Commission,* 523 Pa. 347, 567 A.2d 630 (1989) (*Blackwell II* ), which held that section 4(4) of The Sunset Act, Act of December 22, 1981, P.L. 508, 71 P.S. § 1795.4(4), was an unconstitutional delegation of legislative power and therefore void. The Court in *Blackwell V* stated:

> We hold that [Blackwell II] is to be applied retroactively to the instant appeal and to all proceedings pending at the time we announced our decision in Blackwell II, *in which the issue of the constitutionality ... of the Sunset Act ... was timely and properly raised and preserved by the parties.*

*Id.* 527 Pa. 172 at 174–75, 589 A.2d at 1095. (Emphasis added.)

Based on the applicability discussion in *Blackwell V,* we concluded that the petitioners in *Zontek* could not benefit by the holding in *Blackwell II* because their case was pending before the State Ethics Commission on December 13, 1989, when *Blackwell II* was issued, and they had failed to raise the Sunset Act issue decided in *Blackwell II* before that date. Here, as in *Zontek,* McGrath's case was pending before the SBOD when the decision in *Lyness* was announced on March 18, 1992, and McGrath had never raised the "commingling-of-functions" issue before the SBOD.

Nevertheless, McGrath argues that his "commingling-of-functions" issue, first raised on January 6, 1993, is a matter properly before this court because it falls within the exception to Pa.R.A.P. 1551(a), found at Pa.R.A.P. 1551(a)(3). Pa.R.A.P. 1551, entitled Scope of Review, provides in pertinent part:

> **(a) Review of Quasijudicial Orders.** Review of quasijudicial orders shall be heard by the court on the record. No question shall be heard or considered by the court which was not raised before the government unit except:
>
> . . . .
>
> (3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question

within the scope of this paragraph should be so raised it shall remand the record to the government unit for further consideration of the additional question.

McGrath reasons that because *Lyness* was not decided until after his formal hearing, he could not have been expected, through the exercise of due diligence, to have raised a *Lyness* issue before the SBOD. McGrath maintains that the controlling law at the time of his hearing was reflected by our decisions in *Shah v. State Board of Medicine*, 139 Pa.Commonwealth Ct. 94, 589 A.2d 783 (1991), *appeal denied*, 528 Pa. 646, 600 A.2d 197 (1991); *Lyness v. State Board of Medicine*, 127 Pa.Commonwealth Ct. 225, 561 A.2d 362 (1989), *reversed*, 529 Pa. 535, 605 A.2d 1204 (1991), and *State Dental Council and Examining Board v. Pollack*, 457 Pa. 264, 318 A.2d 910 (1974), where, in each case, the procedure under consideration did not violate due process. Thus, he contends that he should not be penalized for failing to foresee the Supreme Court's decision in *Lyness* and relying instead upon this line of established authority.

McGrath's argument is without merit. Initially, we feel compelled to note that, despite McGrath's inference to the contrary, *Lyness* did not establish any new legal principle nor overrule past precedent. In fact, the Court in *Lyness* specifically noted that:

> In determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions.... Thus, a mere possibility of bias under Pennsylvania law is sufficient to raise the red flag of protection offered by the procedural guaranty of due process. Not only does our decision in *Dussia* [Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1975)] make this point explicit, but a steady string of cases over the past three decades has firmly established such a principle as a matter of Pennsylvania law.

*Lyness*, 529 Pa. at 542–44, 605 A.2d at 1207–08. The cases cited by McGrath do not conflict with this principle; in fact, in *Pollack*, while the Court recognized that administrative agencies often had to fulfill both prosecutory and judicial functions,

the Court emphasized that *due process was preserved only so long as the functions are separated adequately.* *Lyness* then simply reaffirmed the constitutional requirement that where both functions reposed in a single administrative entity, walls of division had to be constructed to eliminate the threat or appearance of bias. Because McGrath contends that no such division existed in the SBOD, and, indeed, that creation of such walls was not permitted under the Dental Law, he certainly cannot claim that he failed to object to SBOD procedures because he was misguided by prior case law.

Moreover, even if the resolution of *Lyness* could not have been anticipated by McGrath, we could not agree that Pa. R.A.P. 1551(a)(3) applies here. *Lyness* was decided while McGrath's case was still pending before the SBOD. Indeed, while *Lyness* was decided in March of 1992, the SBOD's adjudication and order was not issued until December of that year. Thus, even though McGrath had failed to challenge the constitutionality of SBOD procedures either before or during his hearing, McGrath could easily have raised the "comming-ling-of-functions" issue before the administrative agency prior to its adjudication.[9] However, McGrath did not do so; in-stead, he waited until the SBOD adjudicated the case against him, almost nine months after *Lyness* was filed, and then argued this issue for the first time in his appeal to this court. Under these circumstances, we cannot say that McGrath

---

**9.** In *Batoff v. State Board of Psychology*, 158 Pa.Commonwealth Ct. 267, 631 A.2d 781 (1993), admittedly decided after the SBOD rendered its adjudication in McGrath's case, we approved the procedure to be followed in similar cases. In *Batoff*, a physician had received an Order to Show Cause, which sought to revoke the physician's license to practice psychology in Pennsylvania. The physician answered the order and a hearing was scheduled for February 10, 1992 but was continued until June 15, 1992. *Lyness* was decided on March 18, 1992. On April 24, 1992, before the scheduled hearing date, the physician filed a petition for review with this court in which he raised for the first time the "commingling" issue addressed in *Lyness* and, based on that opinion, sought to enjoin the board there from further proceedings on the Order to Show Cause. We applied the reasoning in *Blackwell V* and determined that because this case was pending at the time *Lyness* was decided, and because the *Lyness* issue was raised in a timely manner, *Lyness* could be retroactively applied in *Batoff*.

exercised due diligence but must conclude that his objection comes too late.

Additionally, McGrath contends that this case is indistinguishable from our Supreme Court's opinion in *Kindle v. State Board of Nurse Examiners*, 512 Pa. 44, 515 A.2d 1342 (1986). We disagree. In *Kindle,* a nurse appealed from an order of the State Board of Nurse Examiners suspending her nursing license more than four years after her misconduct. Although the aggrieved nurse had not originally raised the issue before the board of nurse examiners, the Court nevertheless permitted her to argue the defense of laches, reasoning as follows:

> In the recent decision of Weinberg v. Com., State Board of Examiners, 509 Pa. 143, 501 A.2d 239 (1985), we held that the equitable doctrine of estoppel by laches may be invoked in disciplinary proceedings for professional misconduct. The defense of laches was raised originally by Kindle in her appeal to the Commonwealth Court, rather than in her answer to the Board's citation. The Board argues that the issue was waived by her failure to raise the issue during the administrative proceeding. We hold now that the defense of laches must be raised at the administrative level and that failure to do so will constitute a waiver. *Because the holding in Weinberg was this Court's first definitive pronouncement on the availability of laches as a defense in an administrative disciplinary proceeding,* however, we will permit Kindle to pursue this defense on remand of the matter to the Board.

*Id.,* 512 Pa. at 48–49, 515 A.2d at 1344 (footnote omitted; emphasis added).

McGrath is markedly distinguishable from *Kindle.* As previously stated, *Lyness* did not originate the idea that due process rights may be compromised by the commingling of prosecutorial and adjudicative functions. Unlike *Weinberg,* which, for the first time, definitively made the defense of laches available in an administrative disciplinary hearing, *Lyness* was part of a line of case law establishing due process rights where commingling of prosecutorial and judicial functions were concerned. Moreover, we note that at the time

*Weinberg* was decided, the nurse in *Kindle* had already filed an appeal to this court raising the issue of laches. By contrast, when *Lyness* was decided, McGrath's case was still pending before the SBOD; however, at no time through the issuance of the SBOD's decision did McGrath raise the *Lyness* issue to the SBOD.

Because McGrath did not raise his procedural due process argument before the SBOD, nor was he prevented from raising it there, he has waived the issue on appeal. Accordingly, we affirm the order of the SBOD.

## ORDER

AND NOW, this 19th day of October, 1993, the order of the State Board of Dentistry, dated December 8, 1992, is affirmed.